UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT McCUMBER,<br><br>                                    Plaintiff,<br><br>v.<br><br>COSCO INDUSTRIES, INC., MATT KOWALEC,<br>IVAN PHILPOT and LARRY FERGUSON,<br><br>                                    Defendants. | Civil Action No. 1:04-cv-11693-RGS |

### DEFENDANTS COSCO INDUSTRIES, INC.'S AND IVAN PHILPOT'S
### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendants, Cosco Industries, Inc. ("Cosco") and Ivan Philpot ("Philpot"), by their

counsel, submit this memorandum in support of their motion to dismiss certain claims

asserted in plaintiff's Complaint And Jury Demand ("Complaint") for failure to state a

claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure

12(b)(6).

### PRELIMINARY STATEMENT

Plaintiff's Complaint alleges a variety of claims arising from the termination of

plaintiff's employment with Cosco.  These include breach of contract for failure to pay

plaintiff pursuant to a Salary Continuation Agreement (Count I); breach of contract for

failure to pay plaintiff a severance upon constructive discharge (Count II); wrongful

discharge (Count III); tortious interference with contract and with prospective advantage

(Count IV); and common law whistle-blower protection (Count V). These claims are asserted against some or all of the various defendants named in the Complaint.

For the reasons stated herein, Counts II and IV fail to state claims against Cosco or Philpot, and should therefore be dismissed.

## STATEMENT OF FACTS

### A.    The Parties

According to the Complaint, the plaintiff, Robert McCumber, is a resident of Massachusetts, who worked for Cosco as Vice President and General Manager of Cosco's Die Tech division in Massachusetts. (Complaint, ¶¶ 3, 6, 19). Plaintiff alleges that defendant Cosco, a manufacturer of rubber stamp components, is a Delaware corporation with its principal place of business in Illinois. Id. at ¶¶ 7, 14. Defendant Matt Kowalec ("Kowalec") is the Chief Operating Officer of Cosco, and defendants Philpot and Larry Ferguson ("Ferguson") are both consultants to Cosco's Graphics Division. Id. at ¶¶ 15-17. Philpot resides and works in Texas; and defendant Ferguson resides and works in California. Id. at ¶¶ 7-10.

### B.    The Salary Continuation Agreement

Plaintiff alleges that he had a Salary Continuation Agreement with Cosco, under which plaintiff was to be paid certain salary and benefits under certain circumstances of plaintiff's termination of employment. Id. at ¶¶ 2-3. This action is brought for the alleged breach of the Salary Continuation Agreement, as well as certain tort claims. Id. at Counts I through V.

2

## C.     The Massachusetts Meeting

The facts giving rise to plaintiff's Complaint involve a May, 2003 meeting at Die Technology Associates ("Die Tech"), a business unit of Cosco.  Complaint, ¶¶ 19-20, 23. Plaintiff claims that in the first week of May, 2003, he attended a meeting at Die Tech's facilities in Randolph, Massachusetts.  Id. at ¶ 23.  With him at that meeting were Philpot, Ferguson, Kowalec, and plaintiff's supervisor, Timothy Teen ("Teen").  Id.  Plaintiff alleges that during that meeting, Ferguson and Philpot disclosed confidential business secrets of Matthews, a competitor of Cosco's Graphics division.  Id. at ¶¶ 23-32.  Plaintiff further claims that the defendants planned to use the confidential business information which was allegedly stolen or misappropriated from Matthews, and that defendants were concerned that Teen and plaintiff would interfere with those plans.  Id. at ¶¶ 34-35.  In order to clear the path for Cosco to use the allegedly stolen and confidential information, plaintiff claims that defendants took steps to terminate plaintiff and Teen, and to do so without paying plaintiff under his Salary Continuation Agreement.  Id. at ¶¶ 36-37.

## D.     Plaintiff's Termination

In furtherance of the alleged plan to terminate him or force him to quit, plaintiff contends that the defendants stripped him of his rights, responsibilities and authority. Complaint, ¶ 38.  Plaintiff alleges that on May 21, 2003, defendants Philpot and Ferguson informed him that he was to report to them instead of to Teen.  Id. at ¶ 39.  Approximately a month later, Philpot and Ferguson allegedly informed plaintiff that he was being stripped of his responsibilities as Vice President and General Manager of the Die Tech division of Cosco, and that plaintiff's duties would be limited to making sales calls.  Id. at ¶ 40.

3

Shortly thereafter, and between June 30, 2003 and July 1, 2003, plaintiff alleges that he e-mailed Kowalec and informed him of plaintiff's demand for payment of a severance package under his Salary Continuation Agreement, as a result of the change in job responsibilities. Id. at ¶¶ 45-50. According to the Complaint, Kowalec and Cosco have refused to respond to plaintiff's demand, and instead informed him, via e-mail, that plaintiff was still the Vice President and General Manager of Die Tech, and would be paid as such. Id. at ¶ 51-53. In response, on July 2, 2003, plaintiff e-mailed Kowalec, reiterating his request for payment under the Salary Continuation Agreement. Id. at ¶ 54. Plaintiff alleges that on July 7, 2003, Kowalec sent plaintiff a letter ordering him to report to work and undertake the duties assigned by Philpot. Id. at ¶ 55. Plaintiff failed to report, and on July 15, 2003, Kowalec sent plaintiff a letter terminating him for insubordination. Id. at ¶ 56.

Upon these allegations, plaintiff asserts claims for breach of contract for failure to pay him under his Salary Continuation Agreement and for failure to pay him a severance upon constructive discharge, wrongful discharge, tortious interference with contract and prospective advantage, and common law whistle-blower protection.

## ARGUMENT

### A.    Count II Fails to State A Claim For Breach of Contract By Failure To Pay Severance Upon Constructive Discharge.

In Count II of the Complaint, plaintiff alleges that Cosco's actions "in stripping McCumber of his responsibilities constituted a constructive discharge of McCumber for

reasons other than 'for cause.'"  Complaint, ¶ 63.  Significantly, the asserted change or reduction in plaintiff's responsibilities is the only basis asserted for the alleged constructive discharge.  Indeed, plaintiff acknowledges that his title, salary, and benefits were unchanged by the reassignment of responsibilities.  Id. at ¶¶ 52-53.

Under these facts, accepted as true for purposes of this motion to dismiss, no claim of constructive discharge is stated.  "The bottom line is simply this:  a reduction in responsibility or a change in the way business is done, unaccompanied by diminution of salary or some other marked lessening of the quality of working conditions, does not constitute a constructive discharge."  Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 55 (1st Cir. 2000).  Instead, to state a claim for constructive discharge requires facts from which it could be found that "the new working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."  Rosado v. Santiago, 562 F.2d 114, 119 (1st Cir. 1977).  See also GTE Products Corp. v. Stewart, 421 Mass. 22, 34, 653 N.E.2d 161, 169 (1995) (claim for constructive discharge requires an objective evaluation of whether the expected working conditions were intolerable).  No such allegations are made here.

From the allegations of the Complaint and the e-mails and letters quoted therein, one gets the sense that plaintiff felt marginalized and was perhaps too proud to continue to work for Cosco under the revised responsibilities.  See Complaint, ¶¶ 47, 50, 54. However, "even assuming that the changes of which [plaintiff] complains betokened an effort to marginalize him, this sort of injury to an employee's ego or prestige does not furnish a legally cognizable reason to treat a resignation as a constructive discharge."  Suarez, 229

5

F.3d at 55.  Because plaintiff's claim in Count II is predicated upon an alleged constructive

discharge, but fails to allege facts necessary to establish a constructive discharge, Count II

should be dismissed.

**B.    Count IV Of The Complaint Fails To State A Claim Upon Which Relief May Be Granted.**

    1.    <u>No claim of interference can be maintained against Cosco.</u>

Count IV of the Complaint purports to state a claim for tortious interference with

contract or prospective economic advantage.  Complaint, ¶¶ 74-89.  Though there are no

allegations of conduct by Cosco in support of Count IV, plaintiff does include Cosco in its

"Wherefore" clause, stating as follows:

> WHEREFORE, Plaintiff Robert McCumber demands this Court enter judgment in his favor and against defendant Cosco Industries, Inc., Kowalec, Philpot and Ferguson, for [specified relief].

Complaint, p. 15.

To the extent that Count IV attempts to assert a claim for tortious interference

against Cosco, it must fail.  A party cannot be liable for tortious interference with its own

relationship or contract.  <u>See</u> <u>Riseman v. Orion Research, Inc.</u>, 394 Mass. 311, 314, 475

N.E.2d 398, 400 (1985).  Rather, a claim for tortious interference with contractual relations

will lie only where:

> (1) the plaintiff had a contract with a third party, (2) the defendant knowingly induced the third party to break that contract, (3) the defendant's interference was improper in motive or means,  and (4) the plaintiff was harmed by the interference.

<u>Alba v. Sampson</u>, 44 Mass. App. Ct. 311, 314, 690 N.E.2d 1240, 1243 (1998).

6

The contractual or economic relationship allegedly interfered with in Count IV is plaintiff's employment and Salary Continuation Agreement which plaintiff allegedly had with Cosco. Because Cosco is a party to that contract, no claim for tortious interference with it can be brought against Cosco. The same holds true for any claim of interference with plaintiff's alleged prospective economic advantage through his expectation of continued employment at Cosco. Cosco is a party to any employment or other economic relationship that is the basis for plaintiff's claim, and therefore cannot be liable on a claim of tortiously interfering with it.

2.     No claim of interference is alleged against Philpot.

For similar reasons, Count IV fails to state a claim for tortious interference against Philpot. According to plaintiff, Philpot and the other individual defendants were acting on behalf of Cosco when they allegedly interfered with plaintiff's employment and Salary Continuation Agreement. The Complaint identifies Philpot as a consultant to Cosco, and claims that the supervisory duties previously assigned to plaintiff were reassigned to Philpot. Complaint, ¶¶ 16, 20, 40. Plaintiff makes no allegation that any of the conduct complained of was taken by Philpot acting individually.

The significance of this flows from the legal premise that no liability exists for interfering with one's own contract. See Section B(1), supra. As stated above, Cosco cannot be liable for interfering with its own contract or relationship with plaintiff. Because a corporation can act only through its officers, employees and agents, those individuals are likewise protected from liability for tortious interference. See McMillan v. Massachusetts Soc. For Prevention of Cruelty to Animals, 880 F. Supp. 900, 910 (D.Mass. 1995). In

7

order to hold such agents, supervisors, and employees liable for interference, it must be alleged that the individual acted "not for a legitimate business reason but rather solely because of the [agent's] personal feelings of malice . . ." Id. (citing Steranko v. Inforex, Inc., 5 Mass. App. Ct. 253, 273, 362 N.E.2d 222, 235 (1977)). A corporate agent cannot be liable for acts which allegedly constitute tortious interference with a contract between plaintiff and the corporation unless the alleged acts of interference were taken individually, rather than within the scope of his employment responsibilities with the corporation. Steranko, 5 Mass. App. Ct. at 273, 362 N.E.2d at 235. "[T]heir freedom of action directed toward corporate [rather than personal] purposes should not be curtailed by fear of personal liability." Id. In the absence of allegations that Philpot acted on his own, rather than as an agent of Cosco, Philpot's actions cannot support a claim for tortious interference with plaintiff's employment or his Salary Continuation Agreement.

3.    Plaintiff fails to adequately allege malice.

An additional defect in Count IV is the insufficiency of plaintiff's allegations of malice. With regard to alleging malice necessary to support a cause of action for tortious interference, plaintiff's general assertions, that the actions of the individual defendants "were intentional, malicious and without justification" (Complaint, ¶ 85; see also id. at ¶¶ 67, 69 alleging that defendants acted "wrongfully and maliciously"), are woefully inadequate.

> In the employment and discharge context, the law of this jurisdiction seeks to protect a corporate official's freedom of action by requiring proof that the official acted with actual malice. . . . An employee must demonstrate that spite or malevolence, i.e., a purpose unrelated to any legitimate corporate interest, was the controlling factor in urging the plaintiff's discharge.

8

Alba v. Sampson, 44 Mass. App. Ct. at 314, 690 N.E.2d at 1243.

Plaintiff makes no factual allegations to support even an inference of actual malice on the part of Philpot or any of the individual defendants.  According to the Complaint, plaintiff's responsibilities were reassigned and he was directed to report to Philpot. Nothing about such a structural shift in operations and duties gives rise to an inference of malice, much less "actual malice" necessary to support the claim.

> Where, as here, the claim [of interference] is asserted against an individual official of the employer, the plaintiff is required to show, as to "improper motive or means," that the "controlling factor" in the alleged interference was "actual" malice; "implied" malice is not sufficient.  [The] requisite "malice" in this context [is] "a spiteful, malignant purpose, unrelated to the legitimate corporate interest" of the employer.

Weber v. Community Teamwork, Inc., 434 Mass. 761, 781-82, 752 N.E.2d 700, 715 (2001) (quoting Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 664, 429 N.E.2d 21, 24 (1981) and Boothby v. Texon, Inc., 414 Mass. 468, 487, 608 N.E.2d 1028, 1040 (1993)). Plaintiff makes only the barest and most conclusory of allegations that Philpot acted with malice, and offers no facts to support an inference of actual malice. See Weber, 434 Mass. at 783 (the defendant's behavior "must rise to the level of personal hostility or ill-will to satisfy the malice standard.").  "Honest belief that a supervisor's conduct furthers the employer's interest is not sufficient to constitute malice, . . . [n]or is ambition and a desire for personal gain." Bozek v. Mediq Mobile X-Ray & EKG, 1996 Mass. Super. LEXIS 34, *9-10 (Mass. Sup. Ct. Nov. 7, 1996).

Moreover, there are no facts in the Complaint to suggest that Philpot held any spite, personal hostility or ill-will towards plaintiff.  To the contrary, the allegations, if taken as

9

true, indicate that the decisions made and actions taken by defendants with respect to plaintiff's employment and responsibilities were motivated by a corporate interest in using the allegedly confidential Matthews information, and in avoiding a payout under plaintiff under the Salary Continuation Agreement. See Complaint, ¶¶ 35-38. Because such purposes relate to a legitimate corporate interest, and therefore negate the conclusory allegation of malice, Count IV fails to state a claim for intentional interference. See Alba v. Sampson, 44 Mass. App. Ct. at 315, 690 N.E.2d at 1243 ("[The] employee must demonstrate that spite or malevolence, i.e., a purpose *unrelated to* any legitimate corporate interest, was the controlling factor in urging the plaintiff's discharge.").

## CONCLUSION

For each of the foregoing reasons, Cosco Industries, Inc. and Ivan Philpot respectfully requests that this Court grant their motion and dismiss them from Counts II and IV of the Complaint.

Dated:  September 3, 2004

Respectfully submitted,

Bruce E. Falby (BBO # 544143)
Kirsten M. Nelson (BBO # 634520)
**PIPER RUDNICK LLP**
One International Place
Boston, MA  02110
(617) 406-6000

Attorneys for Defendants
Cosco Industries, Inc. and Ivan Philpot

10

## CERTIFICATE OF SERVICE

I, Kirsten M. Nelson, hereby certify that on this 3d day of September, a copy of the foregoing document was served upon counsel of record, David A. Carey, Esq., Fragomeni & Carey, 15 Broad Street, Boston, MA 02109, by hand, and Lisa M. Curry, Esq., Uffelman & Curry, 165 Washington Street, Morristown, NJ 07960, by first-class mail, postage prepaid.

Kirsten M. Nelson

~CHGO1:30482999.v1 |8/31/04 1:47 PM