# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Robert McCumber | ) |
|  | ) |
|  | ) Civil Action No. 1:04-cv-11693-RGS |
|  | ) |
| Plaintiff | ) |
|  | ) |
| v. | ) |
|  | ) |
| Cosco Industries, Inc., Matt Kowalec, | ) |
| Ivan Philpot and Larry Ferguson, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

## LARRY FERGUSON'S ANSWER AND JURY DEMAND

Defendant LARRY FERGUSON ("Ferguson"), for his Answer to the Complaint filed herein, states as follows:

## NATURE OF ACTION

1.     This action is related to a matter currently pending in this Court, *i.e., Teen v. Cosco Industries, Inc. et al.,* Civil Action 03-2880 (Hon. John C. Lifland, U.S.D.J., D.N.J *filed* June 13, 2003).

**ANSWER:**   Ferguson denies that there is currently pending in this Court any action such as that referenced in Paragraph 1 of the Complaint, and further states that the action styled *Teen v. Cosco Industries, Inc. et al.,* which was pending in the United States District Court for the District of New Jersey, has been dismissed.

2.     Plaintiff brings this action to redress economic injury he suffered and is continuing to suffer from defendant Cosco's breach of an employment contract between Cosco and McCumber, *i.e.,* the "Salary Continuation Agreement" dated February 2002.

**ANSWER:**   Ferguson admits that plaintiff has filed a complaint seeking the referenced relief, but denies that plaintiff is entitled to any of the relief sought against Cosco, Philpot or Ferguson.  Ferguson denies all other allegations contained in Paragraph 2.

3.    The Salary Continuation Agreement provided for salary and benefits payable to McCumber upon his termination from his employment with Cosco as Vice President and General Manager of the Die Tech division of Cosco, subject to certain conditions as set forth in the Salary Continuation Agreement.

**ANSWER:**    Ferguson states that the Salary Continuation Agreement speaks for itself.

Ferguson is otherwise without sufficient knowledge or information to form a belief as to the truth

of the allegations of Paragraph 3.

4.    The suit is also brought to redress economic and personal injury to McCumber caused by the tortious conduct of Cosco and the individual defendants Kowalec, Philpot and Ferguson ("Individual Defendants").

**ANSWER:**    Ferguson admits that plaintiff has filed a complaint seeking the referenced

relief, but denies that plaintiff is entitled to any of the relief sought against Cosco or any of the

individual defendants.  Ferguson denies all other allegations contained in Paragraph 4.

5.    Defendants' wrongful conduct is causing irreparable harm to McCumber, and is threatening additional irreparable harm, for which there is no adequate legal remedy.

**ANSWER:**    Ferguson denies the allegations of Paragraph 5.

## JURISDICTION AND VENUE

6.    Plaintiff McCumber is a citizen of Massachusetts residing at 53 Meeting House Road, Indian Pond Estates, Kingston, Massachusetts 02364.

**ANSWER:**    Ferguson is without sufficient knowledge or information to form a belief

as to the truth of the allegations of Paragraph 6.

7.    Defendant Cosco is a Delaware corporation, upon information and belief, with its principal place of business at 7220 West Wilson Avenue, Harwood Heights, Illinois.

**ANSWER:**    Ferguson admits the allegations of Paragraph 7.

8.    Defendant Kowalec, on information and belief, is either a citizen of California, or has recently become a citizen of Illinois with business offices at 7220 West Wilson Avenue, Harwood Heights, Illinois.

**ANSWER:**    Ferguson is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 8.

9.    Defendant Philpot is a citizen of Texas, residing and maintaining business offices in Irving, Texas.

**ANSWER:**    Ferguson is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 9.

10.    On information and belief, defendant Ferguson is a citizen of California, residing and maintaining business offices at 7400 Artesia #307, Buena Park, California.

**ANSWER:**    Ferguson admits that he is a citizen of California and that he resides and maintains a business office in Buena Park, California.  Ferguson denies the remaining allegations of Paragraph 10.

11.    This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (complete diversity), inasmuch as the amount in controversy herein is greater than $75,000, exclusive of interest and costs, and the action is between a plaintiff who is a citizen of Massachusetts and defendants who are all citizens of States other than Massachusetts.

**ANSWER:**    Ferguson is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 11.

12.    This court has personal jurisdiction over defendant Cosco in that it has been doing business in the State of New Jersey at all relevant times herein (calendar years 2002 and 2003) and employed plaintiff's supervisor in this State.

**ANSWER:**    Ferguson is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 12.

13.    This Court has personal jurisdiction over each of the Individual Defendants in that each committed and/or conspired to commit one or more tortious acts within the State of New Jersey in furtherance of a common plan to cause injury to plaintiff in Massachusetts and each has sufficient minimum contacts with this jurisdiction to justify assertion of jurisdiction over him.

**ANSWER:**    Ferguson is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 13.

## BACKGROUND

14.    Defendant Cosco is one of the nation's oldest and largest manufacturers of rubber stamp components.

**ANSWER:**    Ferguson admits that Cosco is a manufacturer of rubber stamp components, but is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 14.

15.    Defendant Kowalec is Chief Operating Officer ("COO") of Cosco.

**ANSWER:**    Ferguson admits the allegations of Paragraph 15.

16.    Defendant Philpot is a consultant to Cosco's graphics division.

**ANSWER:**    Ferguson is without sufficient knowledge or information to form a  belief as to the truth of the allegations of Paragraph 16.

17.    Defendant Ferguson is a consultant to Cosco's graphics division.

**ANSWER:**    Ferguson denies that he is currently a consultant to Cosco's graphics division, and therefore denies the allegations of Paragraph 17.

18.    As of May 22, 2003, neither Philpot nor Ferguson had ever been an employee of Cosco.

**ANSWER:**    Ferguson admits that as of May 22, 2003, he had never been an employee of Cosco.  Ferguson is without sufficient knowledge or information to form a belief as to the remaining allegations of Paragraph 18.

19.    Die Technology Associates ("Die Tech"), located primarily in Randolph, Massachusetts, is a business unit of Cosco.

**ANSWER:**    Ferguson admits the allegations of Paragraph 19.

20.    In or about April or May 2003, Cosco retained Philpot and Ferguson as consultants with respect to the Graphics Division.

**ANSWER:**    Ferguson admits the allegations of Paragraph 20.

21.    Philpot and Ferguson are both former employees of Matthews International, Inc. ("Matthews"), a graphics company with its principal offices in Pittsburgh, Pennsylvania.

**ANSWER:**    Ferguson admits the allegations of Paragraph 21.

22.    Matthews, a publicly-traded company, competes with Cosco's Graphics Division and is one of the largest companies competing in the graphics industry nationwide.

**ANSWER:**    Ferguson admits that Matthews is a publicly-traded company that competes with Cosco's Graphics Division.  Ferguson is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 22.

23.    At a meeting in or about the first week of May 2003 at Die Tech's facilities in Randolph, Massachusetts, between Philpot, Ferguson, Kowalec, McCumber and Timothy Teen ("Teen"), general manager of Die Tech, Ferguson and Philpot provided Kowalec with profit and loss information with respect to Matthews's operations.

**ANSWER:**    Ferguson admits that certain information relating to Matthews was reviewed at the May 2003 meeting.  Ferguson denies the remaining allegations of Paragraph 23.

24.    Specifically, Ferguson made the claim that Cosco's Graphics Division should be realizing a net profit of six to eight percent of sales.

**ANSWER:**    Ferguson admits that  either he or Philpot made the claim that Cosco's Graphics Division should be realizing a net profit of 6 to 8 percent of sales.  Ferguson is without sufficient knowledge or information to form a belief as to the remaining allegations of Paragraph 24.

25.    In response to Ferguson's claim that the division should realize a net profit of six to eight percent, Kowalec asked Ferguson, in words or effect, "Where did you get that number?"

**ANSWER:**    Ferguson is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 25.

26.    In response to Kowalec's question, Ferguson stated, in words or effect, "Right here. In the Matthews P & L [profit and loss report]," and handed a report to Kowalec to examine.

**ANSWER:**    Ferguson admits that Kowalec was given a copy of materials relating to Matthews.  Ferguson denies the remaining allegations of Paragraph 26.

27.    After Kowalec examined the Matthews P & L report, Ferguson offered to give Kowalec a copy, and then left the room, subsequently returning with a copy which he provided to Kowalec.

**ANSWER:**    Ferguson is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 27.

28.    Upon information and belief, the Matthews P & L report which Ferguson provided to Kowalec contained confidential business secrets and information belonging to Matthews.

**ANSWER:**    Ferguson denies the allegations of Paragraph 28.

29.    Upon information and belief, Ferguson also has in his possession additional confidential business secrets and information belonging to Matthews.

**ANSWER:**    Ferguson denies the allegations of Paragraph 29.

30.    Upon information and belief, Philpot also has in his possession additional confidential business secrets and information belonging to Matthews, including information with respect to that company's manufacturing and materials costs.

**ANSWER:**    Ferguson is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 30.

31.    Upon information and belief, Philpot and Ferguson have no right to possess confidential business information belonging to Matthews or to use such information on behalf of a competitor with Matthews.

**ANSWER:**    Ferguson denies the allegations of Paragraph 31.

32.    Upon information and belief, Kowalec was aware that information in the possession of Ferguson and/or Philpot constituted confidential business secrets and information belonging to Matthews, and that Philpot and Ferguson had no right to possess such confidential business information or to use such information on behalf of a competitor with Matthews.

**ANSWER:**    Ferguson is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 32 concerning Kowalec's state of mind.  Ferguson denies the remaining allegations of Paragraph 32.

33.    During the entire course of his employment with Cosco, McCumber did not commit any acts contrary to the best interests of Cosco or behave in any manner which would justify that Cosco terminate him "for cause."

**ANSWER:**    Ferguson denies the allegations of Paragraph 33.

34.    At a date and time unknown to McCumber, the Individual Defendants became concerned that McCumber's continued presence at Cosco would interfere with their plans to use confidential business information misappropriated or stolen from Matthews.

**ANSWER:**    Ferguson denies the allegations of Paragraph 34.

35.    At a date and time unknown to McCumber, the Individual Defendants also became concerned that the continued presence at Cosco of McCumber's immediate supervisor, Teen, would interfere with their plans to use confidential business information misappropriated or stolen from Matthews.

**ANSWER:**    Ferguson denies the allegations of Paragraph 35.

36.    At a date and time unknown to McCumber, the Individual Defendants conspired and agreed to terminate McCumber's employment without paying him the Salary Continuation Agreement.

**ANSWER:**    Ferguson denies the allegations of Paragraph 36.

37.    In order to implement their plan, the Individual Defendants, with the assistance of others, caused Cosco to terminate the employment of Teen on or about May 22, 2003.

**ANSWER:**    Ferguson denies the allegations of Paragraph 37.

38.    In order to implement their plan, the Individual Defendants, with the assistance others, used Cosco to terminate the employment of McCumber by stripping him of all his duties, responsibilities and authority, with the hope that McCumber would quit.

**ANSWER:**    Ferguson denies the allegations of Paragraph 38.

39.    On or about Wednesday, May 21, 2003, defendants Philpot and Ferguson informed McCumber that he would no longer report to Teen but would report instead to them.

**ANSWER:**    Ferguson denies the allegations of Paragraph 39.

40.    On or about Wednesday, June 25, 2003, defendants Philpot and Ferguson informed McCumber that he was being stripped of his responsibilities as Vice President and General Manager of the Die Tech division of Cosco, as follows:

a)    Philpot would assume primary management of Die Tech;

b)    McCumber would no longer have any supervisory authority over the employees of Die Tech who previously reported to him - they would report instead to Philpot;

c)    McCumber would no longer have primary internal responsibility for the financial operations of Die Tech; and

d)    McCumber's responsibilities would be limited to making sales calls on existing and potential customers as a salesman of Die Tech products but Philpot and Ferguson had not decided yet what territory or customers would be his responsibility.

   **ANSWER:**    Ferguson denies the allegations of Paragraph 40.

41.    In stripping McCumber of the vast majority of his authority and responsibilities, and terminating him from the duties of his position as Vice President and General Manager of Die Tech, Cosco breached the Salary Continuation Agreement and triggered the severance obligations therein.

   **ANSWER:**    Ferguson denies the allegations of Paragraph 41.

42.    The termination of McCumber was not "for cause."

   **ANSWER:**    Ferguson denies the allegations of Paragraph 42.

43.    At no time during his employment with Cosco or thereafter did McCumber engage in "misconduct, insubordination, dishonesty, fraud, conspiracy or competition against Cosco."

   **ANSWER:**    Ferguson denies the allegations of Paragraph 43.

44.    At no time during his employment with Cosco or thereafter did McCumber divulge improperly any confidential information of Cosco to any person.

   **ANSWER:**    Ferguson is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 44.

45.    On or about June 30, 2003, McCumber informed Cosco that it was obligated to provide him with the severance package set forth in the Salary Continuation Agreement.

   **ANSWER:**    Ferguson is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 45 concerning what McCumber informed Cosco. Ferguson denies the remaining allegations of Paragraph 45.

46.    At all times since June 30, 2003, McCumber has made known to Cosco that it was obligated to pay him the severance package set forth in the Salary Continuation Agreement.

**ANSWER:**    Ferguson is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 46.

47.    On or about June 30, 2003, McCumber sent Kowalec an email which contained the following statements:

> As you are aware, on June 25, 2003, Cosco Industries, Inc. ("Cosco") terminated me from my employment as Vice President and General Manager ("VP/GM") of the Die Tech division of Cosco, replaced me with Ivan Philpot and offered me employment as a salesman for Die Tech. As you are also aware, in February 2002, Cosco and I had entered into a Salary Continuation Agreement ("Agreement") which Cosco's president David E. Tittle executed on behalf of Cosco. Your offer of continued employment as a salesman confirms that the termination of my employment as VP/GM was not "for cause" as defined in paragraph I.B. of the Agreement.

**ANSWER:**    In response to Paragraph 47, Ferguson states that the June 30, 2003 email from McCumber to Kowalec speaks for itself.    Ferguson is otherwise without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 47.

48.    McCumber's e-mail of June 30, 2003 also contained demands for payment under the Salary Continuation Agreement, as follows:

> PLEASE BE ADVISED that I hereby invoke paragraph I.A.2 of the Agreement and demand payment of the following for a period of one (1) year ("Payout Period"):
>
> i) Salary Continuation at my current salary rate of One Hundred Twenty-Five Thousand dollars ("$125,000.00), payable in fifty-two weekly (52) installments, net of required employee withholdings:
>
> ii) Continuation of lease payments on the automobile leased for me by Cosco, or at Cosco's election, a monthly car allowance of Six Hundred and Forty-Five dollars ($645.00);
>
> iii) Continuation of all Cosco employee benefits for me and my dependents; and

iv) Outplacement services not to exceed $25,000.00.

Pursuant to subparagraph I.A.2(iii) above, I also will be using the corporate automobile credit cards during the Payout Period.

In addition to the above, pursuant to paragraph II.A.2 of the Agreement, Cosco will be required to provide me with a full release upon completion of the Payout Period provided that I comply with my obligations pursuant to section II of the Agreement.

**ANSWER:** In response to Paragraph 48, Ferguson states that the June 30, 2003 email from McCumber to Kowalec speaks for itself. Ferguson is otherwise without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 48.

49.    Since June 25, 2003, Cosco has not provided McCumber with the severance package set forth in the Salary Continuation Agreement.

**ANSWER:** Ferguson is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 49.

50.    On or about July 1, 2003, McCumber sent Kowalec an email which contained the following statements and request:

On June 25, 2003, Ivan Philpot was given managerial authority over all Die Tech and Cosco Graphics operations, replacing me in that role. Die Tech and Cosco Graphic employees who previously reported to me no longer report to me. I no longer have managerial duties at Die Tech and Cosco Graphics. My duties and authority have been stripped. Cosco has terminated me from the authority, duties and position of Vice President-General Manager.

Please inform me if this understanding is not correct.

**ANSWER:** In response to Paragraph 50, Ferguson states that the July 1, 2003 email from McCumber to Kowalec speaks for itself. Ferguson is otherwise without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 50.

51.    Kowalec and Cosco have each failed and refused to respond to McCumber's request of July 1, 2003.

**ANSWER:**    Ferguson is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 51.


52.    Since July 1, 2003, Cosco has claimed that McCumber continued to be the nominal "Vice President and General Manager" of Die Tech and that he would be paid his prior salary, even though he no longer had the duties, authority or responsibilities of Vice President and General Manager but rather was expected to perform the duties of a salesman.

**ANSWER:**    Ferguson is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 52.


53.    On or about July 2, 2003, Kowalec sent McCumber an email in which Kowalec claimed that McCumber had not been terminated but continued to be the nominal "Vice President and General Manager" of Die Tech and that he would be paid his prior salary, even though he no longer had the duties, authority or responsibilities of Vice President and General Manager but rather was expected to perform the duties of a salesman.

**ANSWER:**    In response to Paragraph 53, Ferguson states that the July 2, 2003 email from Kowalec to McCumber speaks for itself.    Ferguson is otherwise without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 53.


54.    On or about July 2, 2003, McCumber sent Kowalec an email which noted that McCumber's duties and responsibilities were no longer those of a Vice President - General Manager, but instead were merely the duties of an ordinary salesman, no matter what nominal title he was given, stating as follows:

> If you call someone the "Vice President -- General Manager" but merely give him janitorial duties, he's a janitor. If you merely give him sales duties, he's a salesman. If it walks like a duck and quacks like a duck, it's a duck. Under the Agreement, I am not required to be the janitor, a salesman - or a duck. Since Cosco no longer intends to employ me as Vice President - General Manager, I expect it to honor its contractual commitments.

**ANSWER:**    In response to Paragraph 54, Ferguson states that the July 2, 2003 email from McCumber to Kowalec speaks for itself.  Ferguson denies the remaining allegations of Paragraph 54.

55.    On or about July 7, 2003, Kowalec sent McCumber a letter ordering him to report to work and undertake the salesman duties he had been assigned by Philpot.

**ANSWER:**    In response to Paragraph 55, Ferguson states that the July 7, 2003 letter from Kowalec to McCumber speaks for itself.

56.    On or about July 15, 2003, Kowalec sent McCumber a letter by overnight courier in which Cosco claimed it had terminated McCumber for insubordination.

**ANSWER:**    In response to Paragraph 56, Ferguson states that the July 15, 2003 letter from Kowalec to McCumber speaks for itself.  Ferguson is otherwise without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 56.

57.    Cosco has breached the Salary Continuation Agreement.

**ANSWER:**    Ferguson is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 57.

58.    Kowalec, Philpot and Ferguson tortiously caused Cosco to breach the Salary Continuation Agreement in order to cover up their illegal and unethical involvement in using confidential material stolen from Matthews.

**ANSWER:**    Ferguson denies the allegations of Paragraph 58.

## COUNT ONE

(Breach of Contract by Failure to Pay Salary Continuation Agreement)

59.    Plaintiff realleges and incorporates all previous allegations in this complaint as if set forth in full herein.

**ANSWER:** Ferguson repeats and reiterates his answers to the allegations contained in Paragraphs 1-58 of the Complaint with full force and effect as though more fully set forth herein.

60.    Cosco has breached and continues to breach the Salary Continuation Agreement.

**ANSWER:** Insofar as Count One is not directed against Ferguson, Ferguson makes no answer to the claim. Ferguson denies the allegations of Paragraph 60.

61.    Defendant Cosco is liable to McCumber for the full value of the Salary Continuation Agreement, including compensation, benefits and other perquisites.

**ANSWER:** Insofar as Count One is not directed against Ferguson, Ferguson makes no answer to the claim. Ferguson denies the allegations of Paragraph 61.

## COUNT TWO

(Breach of Contract by Failure to Pay Severance upon Constructive Discharge)

62.    Plaintiff realleges and incorporates all previous allegations in this complaint as if set forth in full herein.

**ANSWER:** Ferguson repeats and reiterates his answers to the allegations contained in Paragraphs 1-61 of the Complaint with full force and effect as though more fully set forth herein.

63.    Defendant Cosco's actions through Philpot and Ferguson in stripping McCumber of his responsibilities constituted a constructive discharge of McCumber for reasons other than "for cause."

**ANSWER:** Insofar as Count Two is not directed against Ferguson, Ferguson makes no answer to the claim. Ferguson denies the allegations of Paragraph 63.

64.    Defendant Cosco breached its contract with McCumber by constructively terminating him other than for cause and not paying him the agreed upon Salary Continuation Agreement.

**ANSWER:**    Insofar as Count Two is not directed against Ferguson, Ferguson makes no

answer to the claim.  Ferguson denies the allegations of Paragraph 64.

65.    Defendant Cosco is liable to McCumber for the full value of the Salary Continuation Agreement, including compensation, benefits and other perquisites.

**ANSWER:**    Insofar as Count Two is not directed against Ferguson, Ferguson makes no

answer to the claim.  Ferguson denies the allegations of Paragraph Paragraph 65.


**COUNT THREE**

(Wrongful Discharge)

66.    Plaintiff realleges and incorporates all previous allegations in this complaint as if set forth in full herein.

**ANSWER:**    Ferguson repeats and reiterates his answers to the allegations contained in

Paragraphs 1-65 of the Complaint with full force and effect as though more fully set forth herein.

67.    Cosco terminated McCumber's employment wrongfully and maliciously.

**ANSWER:**    Ferguson denies the allegations of Paragraph 67.

68.    Each of the Individual Defendants aided and abetted the wrongful discharge.

**ANSWER:**    Ferguson denies the allegations of Paragraph 68.

69.    Each of the Individual Defendants acted wrongfully and with malice.

**ANSWER:**    Ferguson denies the allegations of Paragraph 69.

70.    Defendant Cosco and each of the Individual Defendants, jointly and severally, are liable to McCumber for the full value of the Salary Continuation Agreement, including compensation, benefits and other perquisites.

**ANSWER:**    Ferguson denies the allegations of Paragraph 70.

71.    Defendants are also liable to McCumber for causing him pain, suffering and humiliation on account of the wrongful termination.

**ANSWER:**    Ferguson denies the allegations of Paragraph 71.

72.    Defendants are also liable to McCumber for his costs and attorneys' fees incurred on account of the wrongful termination.

**ANSWER:**    Ferguson denies the allegations of Paragraph 72.

73.    Defendants are also liable to McCumber for punitive damages on account of the wrongful termination.

**ANSWER:**    Ferguson denies the allegations of Paragraph 73

## COUNT FOUR

(Tortious Interference with Contract and Prospective Economic Advantage)

74.    Plaintiff realleges and incorporates all previous allegations in this complaint as if set forth in full herein.

**ANSWER:**    Ferguson repeats and reiterates his answers to the allegations contained in Paragraphs 1-73 of the Complaint with full force and effect as though more fully set forth herein.

75.    McCumber had an employment contract with Cosco which provided him with a Salary Continuation Agreement.

**ANSWER:**    Ferguson is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 75.

76.    McCumber also had an expectation of prospective economic gain through additional employment with Cosco beyond June 26, 2003, which would have occurred but for his being terminated without cause.

**ANSWER:**    Ferguson denies the allegations of Paragraph 76.

77.    Defendants Philpot and Ferguson used confidential information misappropriated from Matthews in order to gain the confidence of defendants Cosco and Kowalec.

**ANSWER:**    Ferguson denies the allegations of Paragraph 77.

78.    Defendants Philpot and Ferguson used confidential information misappropriated from Matthews, and the influence they gained with defendants Cosco and Kowalec by the use of such information, to bring about the termination and/or constructive termination of McCumber.

**ANSWER:**    Ferguson denies the allegations of Paragraph 78.

79.    Defendant Kowalec, knowing that Philpot and Ferguson were using confidential information misappropriated from Matthews, joined with them to bring about the termination and/or constructive termination of McCumber.

**ANSWER:**    Ferguson denies the allegations of Paragraph 79.

80.    Defendants Philpot and Ferguson used confidential information misappropriated from Matthews, and the influence they gained with defendants Cosco and Kowalec by the use of such information, to induce Cosco not to honor its contract with McCumber.

**ANSWER:**    Ferguson denies the allegations of Paragraph 80.

81.    Defendant Kowalec, knowing that Philpot and Ferguson were using confidential information misappropriated from Matthews, joined with them to induce Cosco not to honor its contract with McCumber.

**ANSWER:**    Ferguson denies the allegations of Paragraph 81.

82.    Defendants Kowalec, Philpot and Ferguson, upon information and belief, used other wrongful means to cause the termination of McCumber and to induce Cosco not to honor its contract with McCumber.

**ANSWER:**    Ferguson denies the allegations of Paragraph 82.

83.    Defendants Kowalec, Philpot and Ferguson wrongfully interfered with McCumber's employment contract with Cosco.

**ANSWER:**    Ferguson denies the allegations of Paragraph 83.

84.    Defendants Kowalec, Philpot and Ferguson also wrongfully interfered with McCumber's expectation of additional employment with Cosco beyond June 26, 2003, which would have occurred but for his being terminated without cause.

**ANSWER:**    Ferguson denies the allegations of Paragraph 84.

85.    The actions of Kowalec, Philpot and Ferguson were intentional, malicious and without justification.

**ANSWER:**    Ferguson denies the allegations of Paragraph 85.

86.    The actions of Kowalec, Philpot and Ferguson caused economic injury to McCumber.

**ANSWER:**    Ferguson denies the allegations of Paragraph 86.

87.    The actions of Kowalec, Philpot and Ferguson caused McCumber to suffer humiliation, embarrassment and other pain and suffering in being wrongfully terminated by Cosco.

**ANSWER:**    Ferguson denies the allegations of Paragraph 87.

88.    Defendants Philpot and Ferguson are liable to McCumber for the full value of all economic injury suffered by McCumber, including but not limited to the value of his lost wages and the compensation payable under the Salary Continuation Agreement. Defendants Philpot and Ferguson are liable to McCumber for the full value of all other injury suffered by McCumber.

**ANSWER:**    Ferguson denies the allegations of Paragraph 88.

89.    Defendants Kowalec, Philpot and Ferguson are liable to McCumber for punitive damages.

**ANSWER:**    Ferguson denies the allegations of Paragraph 89.

## COUNT FIVE

### (Common Law Whistle Blower Protection)

90.    Plaintiff realleges and incorporates all previous allegations in this complaint as if set forth in full herein, and pleads this count in the alternative to those previously alleged.

**ANSWER:**    Ferguson repeats and reiterates his answers to the allegations contained in

Paragraphs 1-89 of the Complaint with full force and effect as though more fully set forth herein.

91.    McCumber was fully qualified to perform his duties as Vice President and General Manager of Die Tech. and was performing such duties in a matter fully consistent with the reasonable expectations of Cosco.

**ANSWER:**    Ferguson denies the allegations of Paragraph 91.

92.    Having learned that Philpot and Ferguson had possession of documents which McCumber reasonably believed to be misappropriated or stolen from Matthews (a competitor of Cosco), and that Kowalec was using those documents in connection with Cosco's business, McCumber discussed with Teen the dishonest dealings of the Individual Defendants.

**ANSWER:**    Ferguson is without sufficient knowledge or information to form a belief

as to the truth of the allegations of Paragraph 92 regarding what McCumber claims to have

"learned" or "reasonably believed," and what he claims to have "discussed" with Teen.

Ferguson denies the remaining allegations of Paragraph 92.

93.    Upon information and belief, Teen informed Robert Schmidt, the CEO of Cosco, that the management of Cosco was no longer acting legally and ethically.

**ANSWER:**    Ferguson is without sufficient knowledge or information to form a belief

as to the truth of the allegations of Paragraph 93.

94.    The Individual Defendants aware that McCumber was not in agreement with them using the trade secrets stolen or misappropriated from Matthews.

**ANSWER:**    Ferguson is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 94 regarding what the other individual defendants may have been aware of.  Ferguson denies the remaining allegations of Paragraph 94.

95.    Cosco and the Individual Defendants terminated McCumber, with the approval of Schmidt, on account of their knowledge that he would not cooperate with the illegal and improper business practices of using a competitor's stolen or misappropriated trades secrets.

**ANSWER:**    Ferguson admits that Cosco terminated McCumber with the approval of Schmidt.  Ferguson denies the remaining allegations of Paragraph 95.

96.    The reasons articulated by Cosco and the Individual Defendants for terminating McCumber are false and pretextual.

**ANSWER:**    Ferguson denies the allegations of Paragraph 96.

97.    Massachusetts has strong public policies against unethical and illegal business practices conducted by business entities, including the practices of stealing or misappropriating the trade secrets of competitors, and the false and inaccurate accounting practices.

**ANSWER:**    The allegations of Paragraph 97 contain conclusions of law as to which no answer is required.  Ferguson further states that the Massachusetts public policies speak for themselves.

98.    McCumber's objection to unethical and illegal practices, and his reporting of such practices to Schmidt through Teen, was a determinative factor in the decision of Cosco to terminate McCumber's employment and to deny him the benefits of the Salary Continuation Agreement.

**ANSWER:**    Ferguson is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 98, and therefore denies the same.

99.    Each Individual Defendant aided and abetted Cosco in terminating McCumber, in whole or in part, on account of his protected "whistle-blowing."

20

**ANSWER:**    Ferguson denies the allegations of Paragraph 99.


100.    Each defendant is also liable to McCumber at common law for retaliating against him for reporting illegal or unethical conduct.

**ANSWER:**    Ferguson denies the allegations of Paragraph 100.


101.    Each defendant acted with malice.

**ANSWER:**    Ferguson denies the allegations of Paragraph 101.


102.    Each defendant is jointly and severally liable to McCumber for all damages and remedies available at common law and equity, for terminating him in violation of public policy, including but not limited to

a)  back pay,

b)  front pay in lieu of reinstatement,

c)  compensation for loss of benefits and perquisites,

d)  compensation for pain, suffering, and mental and emotional injury,

e)  compensation for deprivation of rights;

f)  compensation for embarrassment and humiliation,

g)  compensation for injury to reputation,

h)  punitive damages,

i)  equitable relief to prevent future CEPA violations;

j)  his legal costs and fees, including reasonable attorneys' fees, and

k)  such further relief as the Court deems appropriate.

**ANSWER:**    Ferguson denies the allegations of Paragraph 102.


## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted and this party reserves the right to move at or before the time of trial to dismiss same.


**WHEREFORE**, defendant LARRY FERGUSON. demands judgment against plaintiff, dismissing the Complaint and awarding Ferguson costs of suit and attorney's fees as allowed by law.

## <u>TRIAL BY JURY</u>

PLEASE TAKE NOTICE that Ferguson demands a trial by jury on all issues so triable.


Dated:  June 27, 2005.                    LARRY FERGUSON,

                                          By his attorneys,


                                           ___/s/ Jessica W. Manchester
                                          Bruce E. Falby, BBO #554153
                                          Kirsten M. Nelson, BBO #634520
                                          Jessica W. Manchester, BBO #660966
                                          DLA PIPER RUDNICK GRAY CARY US LLP
                                          One International Place, 21st Floor
                                          Boston, MA 02110
                                          Telephone: 617-406-6000
                                          Fax: 617-406-6100